Case 4:15-cv-00047-HBB   Document 18   Filed 02/10/16   Page 1 of 13 PageID #: 639

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:15CV-00047-HBB

**RICKY G. BOLEN**                                                                                             **PLAINTIFF**

**VS.**

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                                          **DEFENDANT**

**MEMORANDUM OPINION**
**AND ORDER**

BACKGROUND

      The Commissioner of Social Security denied Ricky G. Bolen's applications for disability insurance benefits and supplemental security income. Bolen seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Both Bolen (DN 14-1) and the Commissioner (DN 17) have filed a Fact and Law Summary. Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 12).

FINDINGS OF FACT

      Sometime around 2009 or 2010, Ricky G. Bolen ("Bolen") was experiencing such severe neck and back pain that he could no longer work at the Dell Tile plant where he was performing

1

general service (Tr. 37-39).[1] Bolen went to see Dr. Cannon, a neurosurgeon, who recommended he undergo an "anterior cervical discectomy" (Tr. 19, 31). Dr. Cannon performed the surgery on November 15, 2011, and postoperative treatment notes indicate Bolen did "quite well" and that he was "very pleased with the progress" he made (Tr. 19, 464-65). Bolen claims that almost three months after the surgery, when his pain medication ran out, the numbness and tingling in his lower back reappeared (Tr. 39-40). Bolen states that he can no longer perform as a volunteer firefighter or help people because of his physical limitations (Tr. 43-44).

Bolen applied for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI, claiming that he became disabled on February 1, 2008, as a result of spinal stenosis, degenerative disc disease, and back pain (Tr.165, 169, 232). His applications were denied initially and again on reconsideration (Tr. 74, 83, 94, 104). Administrative Law Judge Jerry Faust ("ALJ") conducted a video hearing in St. Louis, Missouri (Tr. 30). Bolen attended the video teleconference in Owensboro, Kentucky, and was represented by Bradley Rhoads (Tr. 30-32). Kenneth Ogren, an impartial vocational expert, also appeared at the hearing (Tr. 30). The ALJ issued an unfavorable decision on November 6, 2013 (Tr. 23-24).

The ALJ applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520; Kyle v. Comm'r of Soc. Sec., 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Bolen has not engaged in substantial gainful activity since February 1, 2008, the alleged onset date (Tr. 17). Second, Bolen has the following severe impairment: cervical and lumbar degenerative disc disease (Tr. 17). Third, Bolen's impairment does not meet or medically equal the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt.

---

1 Bolen's alleged onset date is February 1, 2008, however, during the hearing Bolen testified that he last worked in the tile plant around 2009 or 2010 (Tr. 39).

P, App'x 1 (Tr. 18). Fourth, Bolen has the residual functional capacity ("RFC") to perform "light work" with the following limitations:

> [T]he claimant can sit with normal breaks 6 hours in an 8-hour workday and can stand and walk with normal breaks for 2 hours in an 8-hour workday. The claimant can only occasionally reach overhead bilaterally and can occasionally stoop, kneel, crouch and crawl and should avoid concentrated exposure to vibrations and all exposure to hazards such as unprotected heights, dangerous machinery, and commercial driving.

(Tr. 18). Additionally, Bolen is unable to perform any of his past relevant work (Tr. 22). Fifth and finally, considering Bolen's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform (Tr. 22).

Bolen appealed the ALJ's decision (Tr. 10-11). The Appeals Council declined review (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Bolen appealed to this Court (DN 1).

## CONCLUSIONS OF LAW

### A. Standard of Review

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching her conclusion. See Landsaw v. Sec'y of Health & Human Servs., 803 F.2d

211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993).

### B. Record Medical Opinions

#### 1. Stacy Head, APRN

Bolen argues that the ALJ wrongfully afforded Stacy Head's opinion "no weight" because her opinion was supported by the record as a whole (DN 14-1, at pp. 7-8). The Commissioner counters that the ALJ properly rejected Stacy Head's opinion because it was highly restrictive and not supported by diagnostic exams or other medical evidence (DN 17, at p. 7).

Stacy Head is an "Advanced Practice Registered Nurse" or "APRN" (Tr. 512). It is well-established that APRNs are not "acceptable medical sources" under the regulations. 20 C.F.R. § 404.1513(a); see Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 541 (6th Cir. 2007); Meredith v. Colvin, No. 3:14cv416, 2015 WL 2137202, at *17 (N.D. Ohio May 7, 2015). Rather, APRNs are considered "other sources" pursuant to 20 C.F.R. § 416.913(d)(1), and their opinions are neither entitled to controlling weight nor subject to the "good reasons" requirement of the treating physician rule. See Social Security Ruling 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006); Borden v. Comm'r of Soc. Sec., No. 1:13CV2211, 2014 WL 7335176, at *9 (N.D. Ohio Dec. 19, 2014). Nonetheless, an Administrative Law Judge may apply the factors from 20 C.F.R. 404.1527(c) to opinion evidence from "other sources." SSR 06-03p at *4-5. These factors include the length, nature, and extent of treatment relationship, the frequency of examination, the supportability and consistency of the opinion, and the specialization of the physician. 20 C.F.R. § 404.1527(c).

Here, the ALJ correctly recognized that because Stacy Head is an APRN, she falls into the "other sources" category, and her opinion is not entitled to controlling weight or deference (Tr. 21).  In support of finding Nurse Head's statements should be accorded "little to no weight," the ALJ explained that her opinion was inconsistent with her prior examinations and findings (Id.). Specifically, the ALJ noted that Nurse Head found Bolen had a normal back examination in February 2013 and a normal neck exam as well as normal extremities bilaterally (Id.).  The ALJ stated "[o]f great concern is that Ms. Head states that [Bolen] [sic] has muscle atrophy and sensory reflex loss," but detailed treatment examinations in February, May, and August of 2013 show the opposite (Id.).  Finally, the ALJ found Nurse Head's opinion was inconsistent with the well-supported opinions from Dr. Diosdado Irlandez and St. Camillus Urgent Care (Id.).

As such, the ALJ rejected Nurse Head's opinion based on the factors from 20 C.F.R. 404.1527(c), including expertise, consistency, and supportability.  The undersigned finds the ALJ's determination to afford Nurse Head's opinion "little to no weight" is supported by substantial evidence in the record and adheres to the relevant law.

## 2. Dr. Tristan Briones

Bolen believes the ALJ erred in failing to afford Dr. Tristan Briones' opinion controlling weight because he is a treating pain specialist (Tr. 14-1, at p. 4).  Specifically, Bolen argues the ALJ did not reference Dr. Briones' treatment or opinion in his decision (Id. at p. 5).  In opposition, the Commissioner claims that Dr. Briones' cannot be considered a treating physician and the ALJ's failure to mention Dr. Briones' treatment and report does not constitute reversible error (DN 17, at pp. 9-11).

The undersigned will first evaluate whether Dr. Briones should be considered Bolen's treating physician.  The regulations define treating source as "your own physician, psychologist,

5

or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502. The regulations explain that "an ongoing treatment relationship" exists when the medical evidence establishes the claimant sees or has seen "the source with a frequency consistent with acceptable medical practice for the type of treatment and/or evaluation required for your medical condition(s)." Id. A source that treats or evaluates a claimant only a few times or only after long intervals can be a treating source "if the nature and frequency of the treatment evaluation is typical" for the claimant's condition(s). Id.

Here, Bolen cites to Exhibits 12F, 14F, and 18F as Dr. Briones' treatment records and opinion (DN 14-1, at pp. 5-6). However, Exhibit 12F includes treatment records from two visits, one signed by Dr. Briones (Tr. 481-84) and one signed by Nick Settles, PA (Tr. 486-89). Exhibit 14F contains two more treatment records, which are "signed by" Nick Settles, PA and "approved by" Tristan Briones MD (Tr. 495-504). Additionally, Exhibit 17F is a letter from Dr. Briones indicating he "followed Mr. Bolen for approximately four visits and at his last visit in May 2013, there really wasn't much we could offer Mr. Bolen by way of pain management" (Tr. 519).[2]

It is unclear whether Dr. Briones actually treated Bolen during the visits where Nick Settles signed the records. If Dr. Briones wasn't treating Bolen at the three visits signed by Nick Settles, then his single visit does not constitute an ongoing treatment relationship. See Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 505 (6th Cir. 2006) ("[A] plethora of decisions hold that a single visit does not constitute an ongoing treatment relationship). Yet if Dr. Briones did treat Bolen at all four visits, it is more likely that an "ongoing treatment relationship" was established.

---

2 Bolen cites to Exhibit 18F as Dr. Briones' treatment records and report, however, Exhibit 17F is actually Dr. Briones' letter (Tr. 519), while Exhibit 18F contains treatment records from Norton Leatherman Spine Center (Tr. 522-27).

The question is whether Dr. Briones' treatment was of the nature and frequency typical for Bolen's impairment and created a longitudinal picture of Bolen's impairments. *See* Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 242 (6th Cir. 2007).

Dr. Briones and Nick Settles' records include examinations of Bolen and detailed treatment recommendations. For instance, Dr. Briones' examination on February 12, 2013, revealed normal findings, with the exception of "painful lumbar muscles with flexion and painful lumbar muscles with extension" (Tr. 483). Dr. Briones also indicated Bolen suffers from left lumbar radicular symptoms with MRI findings of disc protrusions at L4/5 and L5/S1 with left sided foraminal stenosis (Tr. 484). The additional records "approved by" Dr. Briones showed improvement; specifically, Bolen stated he was doing extremely well with lumbar orthosis (Tr. 498). At a three-month follow up, Nick Settles indicated an injection could be both therapeutic and diagnostic, but Bolen resisted the advice due to his fear of needles (Tr. 503). Finally, Dr. Briones letter from September 9, 2013, stated: "I followed Mr. Bolen for approximately four visits and at his last visit in May 2013, there really wasn't much we could offer [him] in the way of pain management" (Tr. 519). Dr. Briones explained that he read the statement of Ms. Stacy Head and "fully concur[s] with her diagnosis and prognosis, as well as the limitations that she has set forth in her report based on the severity of Mr. Bolen's medical conditions" (Id.). The undersigned finds that the record is unclear as to the extent of Dr. Briones' treatment and if it qualifies as an "ongoing treatment relationship."

Regardless of whether Dr. Briones is a treating physician, the ALJ is still required to "evaluate every medical opinion" presented in the record. 20 C.F.R § 404.1527(c). Bolen claims that the ALJ "completely ignored" Dr. Briones' treatment notes and report (DN 14-1, at p.6). Although the ALJ did not mention Dr. Briones by name in his decision, he does cite to

7

treatment notes at Exhibit 14F "approved by" Dr. Briones, stating that in February of 2013 and May of 2013, detailed and extensive examinations of Bolen's legs indicated normal strength, stability, and range of motion with a normal gait and station (Tr. 20-21). The ALJ also pointed out that examinations in May and February of 2013 showed "subjective pain and tenderness with motion, but no motor, sensory, or reflex abnormalities" (Tr. 20). The ALJ did not, however, describe the statements from Dr. Briones' September 2013 letter in his decision. The Commissioner argues that because Dr. Briones' letter concurs with Stacy Head's statement, which the ALJ thoroughly and accurately gave "good reasons" for rejecting, the ALJ did not commit reversible error (DN 17, at p. 11).

Harmless error analysis can apply where the ALJ ignores a source's opinion as long as the decision shows the ALJ "intended to indirectly attack it." Bowen v. Comm'r of Soc. Sec., 478 F.3d 742, 749 (6th Cir. 2007); see also Dykes ex rel. Brymer v. Barnhart, 112 F. App'x 463, 468 (6th Cir. 2004) (applying harmless error standard to non-treating sources). Here, the undersigned does not believe the ALJ intended to indirectly attack Dr. Briones' and Nick Settles' treatment in failing to mention Dr. Briones' letter. Because the ALJ failed to discuss Dr. Briones' letter and failed to specify whether he evaluated (or more specifically, failed to evaluate) Dr. Briones as a treating physician, the undersigned finds remand is necessary.[3]

---

[3] The ALJ must determine whether Dr. Briones is a treating physician because "the source of the opinion dictates the process by which the Commissioner accords it weight." Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013). Treating source opinions must be afforded "controlling weight" when two conditions are met: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(c)(2). On the other hand, opinions from nontreating sources are never assessed for controlling weight. Gayheart, 710 F.3d at 376. The Commissioner weighs nontreating sources based on "the examining relationship (or lack thereof), specialization, consistency, and supportability [.]" Id. (citing 20 C.F.R. § 404.1527(c)).

### C. Additional RFC Challenges

Bolen makes at least four other arguments against the ALJ's RFC determination, including that the ALJ erred in (1) affording Dr. Irlandez's opinion great weight (DN 14-1, at p. 8); (2) improperly speculating as to medical conclusions (Id. at p. 11); (3) not accepting Bolen's testimony as credible (Id. at p. 12); and (4) failing to appropriately consider lay witness testimony (Id. at p. 13). Bolen claims the ALJ's error in failing to discuss Dr. Briones' treatment affects each of the first three arguments. The undersigned agrees that these issues might be affected upon remand and will address each argument in turn.

As to Bolen's first argument, once the ALJ properly evaluates Dr. Briones' notes and opinion, he should then reevaluate Dr. Irlandez's opinion. As to Bolen's second argument, however, the undersigned finds his claim meritless. Bolen argues that two parts of the ALJ's decision were based on improper medical speculation exceeding the scope of the ALJ's authority (DN 14-1, at p. 11). First, Bolen believes the ALJ engaged in speculation by affording great weight to Dr. Irlandez's opinion (Id.). The undersigned has addressed this claim by requiring the ALJ to reevaluate Dr. Irlandez's opinion on remand. Second, Bolen challenges the ALJ's statement that "[a]n MRI showed only minor degenerative changes at C5-6 with no other abnormality detected" (Id.).

An Administrative Law Judge is not permitted to "substitute his own medical judgment for that of the treating physician," Simpson v. Comm'r of Soc. Sec., 344 F. App'x 181, 194 (6th Cir. 2009) (citing Meece v. Barnhart, 192 F. App'x 456, 465 (6th Cir. 2006)), and may not make his own independent medical findings. Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) (citations omitted). The ALJ's statement that "[a]n MRI showed only minor degenerative changes at C5-6 with no other abnormality detected" (Tr. 20) is not improper speculation. In fact, Exhibit 5F,

9

cited by the ALJ, explicitly states that Dr. Patrick Padgett, the interpreting radiologist found "[m]inor degenerative changes at C-5/6; no other abnormality detected" (Tr. 437). Thus, Bolen's second claim of improper speculation is meritless.

As to Bolen's third claim, he argues that (1) the ALJ erred in discounting his credibility based on "medical opinions and evidence as a whole" because the ALJ did not evaluate Dr. Briones' opinion; and (2) the ALJ erred in stating that Bolen's behavior at the hearing seemed to be an attempt "to portray himself as disabled as opposed to an indication of true discomfort" (DN 14-1, at pp. 12-13). The undersigned agrees that the ALJ should reevaluate Bolen's credibility in light of considering Dr. Briones' treatment and opinion. Yet the ALJ need not reassess his finding that Bolen demonstrated suspicious behavior during the hearing (Tr. 20). "[T]he ALJ's opportunity to observe the demeanor of the claimant 'is invaluable'" and should not be discarded lightly. Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 536 (6th Cir. 1981) (citation omitted). Accordingly, the ALJ may properly take into account Bolen's behavior and demeanor in making his overall credibility assessment.

Finally, Bolen challenges the ALJ's decision to afford the four lay witness statements in the record "little weight" (DN 14-1, at p. 13-14). He claims the ALJ erred in categorically rejecting the lay witness testimony on the theory that friends and family can never be credible (Id.). The regulations permit an Administrative Law Judge to use evidence from "[o]ther non-medical sources" (such as spouses, parents, siblings, friends, neighbors, and clergy) to show the severity of a claimant's impairments and how it affects his ability to work. 20 C.F.R. § 404.1513(d)(4). The weight accorded to this testimony, however, is limited. The testimony of lay witnesses "is entitled to perceptible weight only if it is fully supported by the reports of the treating physicians." Simons v. Barnhart, 114 F. App'x 727, 733 (6th Cir. 2004) (citing Lashley v. Sec'y of Soc. Sec.,

708 F.2d 1048, 1054 (6th Cir. 1983)). SSR 06-03p specifies that in evaluating lay witness testimony it is appropriate to consider factors such as "the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-03p, 2006 WL 2329939, at *6.

Here, the ALJ found that although the four witnesses observed and interacted with Bolen, their statements were inconsistent with objective medical findings (Tr. 22). The ALJ, thus, complied with SSR 06-03p. But because a question still remains as to whether Dr. Briones is a treating physician, the testimony of the lay witnesses may be reconsidered on remand if necessary.

### D. Evidence Submitted After the ALJ's Decision

Bolen argues that the ALJ failed to consider treatment records from Norton Leatherman Spine Center in determining that he was not disabled (DN 14-1, at pp. 3-4). Bolen claims that he submitted the records to the ALJ on November 5, 2013, and although the ALJ was made fully aware of this treatment he issued his decision on November 6, 2013, and failed to consider the new objective evidence (Id.). In opposition, the Commissioner explains that these records were not faxed to the ALJ until November 7, 2013, one day after the ALJ rendered his decision (DN 17, at p. 5).

Evidence submitted after the ALJ renders his decision is not part of the administrative record and is not subject to judicial review. Moore v. Comm'r of Soc. Sec., 573 F. App'x 540, 544 (6th Cir. 2014) (citing Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996)). However, the court may remand the case under "sentence six" for further proceedings "if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." Cline, 96 F.3d at 148.

The undersigned agrees with the Commissioner that the documents from Norton Leatherman Spine Center were faxed to the ALJ one day after he rendered his unfavorable decision (DN 14). Additionally, Bolen has made no effort to meet the requirements for a "sentence six" remand. Yet since the undersigned finds an independent basis for requiring remand, the ALJ may consider the records from Norton Leatherman Spine Center to ensure a complete review of Bolen's case.

### E. Combined Effects of Bolen's Impairments

Bolen claims the ALJ erred in determining that the combined effects of his impairments did not render him totally disabled (DN 14-1, at pp. 9-11). Again, Bolen rests his argument on the ALJ's failure to properly evaluate Dr. Briones' treatment and opinion (Id.). The Commissioner counters that the ALJ appropriately considered Bolen's impairments individually and in combination in finding that he did not meet or medically equal the requirements of Listing 1.04 (DN 17, at pp. 3-5). Because Dr. Briones' opinion will be reevaluated on remand, the ALJ may reassess the combined effects of Bolen's impairments if this determination is affected by reevaluation.

## ORDER

For the foregoing reasons **IT IS HEREBY ORDERED** that the final decision of the Commissioner is **REVERSED and REMANDED** for further proceedings consistent with the instant Memorandum, Opinion, and Order.  Upon remand, the ALJ shall reevaluate the opinion of Dr. Briones, indicate the weight assigned to his opinion with explanation, reevaluate and address Bolen's RFC if necessary based upon those reevaluations, and redetermine any other impacted steps in the sequential analysis.

This is a final and appealable Order and there is no just cause for delay.

Copies:	Counsel